Claude W. **INSLEY**, Plaintiff,

v.

William D. **JOYCE** et al., Defendants.

No. 71 C 744.

United States District Court,
N. D. Illinois, E. D.
Aug. 12, 1971.

George E. Faber, James P. Chapman, William J. Harte, Chicago, Ill., for Claude W. Insley.

Leo Segall, Michael C. Greenfield, Asher, Greenfield, Gubbins, & Segall, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

WILL, District Judge.

This class action, challenging a provision of a pension plan adopted by the defendants or their predecessors, is brought by a retired member of Local Union No. 710, International Brotherhood of Teamsters (hereafter referred to as Local 710), who, pursuant to the challenged provision, was denied a retirement pension by the defendants. The plaintiff alleges federal subject matter jurisdiction of this action under § 302 of the Labor Management Relations Act of 1947, 29 U.S.C. § 186 (hereafter referred to as the Act). The defendants move to dismiss the first amended complaint on the grounds that this Court lacks jurisdiction over the subject matter of the complaint and that the complaint fails to state a claim upon which relief may be granted.

The facts are not substantially in dispute. In February of 1955, the Pension Fund involved herein was established by representatives of Local 710 and the Central Motor Freight Association Inc. of Illinois, an association of trucking companies. The Pension Fund agreement provided that its trustees would pay retirement benefits to union members in accordance with the provisions of a Pension Plan to be formulated later. The Fund agreement provides for the employers to make continuing contributions pursuant to the provisions of the collective bargaining agreements entered into between the individual trucking companies and Local No. 710.

Some time after the establishment of the Fund, a Pension Plan was adopted by the trustees containing eligibility provisions for retirement pensions. This Plan provides that Local 710 members are entitled to retirement benefits if they have twenty years of "Credited Service" and satisfy other conditions which are not in issue in this case. The term "Credited Service" is defined as " * * * the sum of an Employee's Past Service and Future Service." The Plan further provides that no credit shall be given to an employee for past service for any period of covered employment prior to an interruption of covered employment of more than three years duration. It is this latter "break-in-service" provision which the plaintiff alleges violates Section 302 of the Act.

The plaintiff has been a member of Local No. 710 for more than thirty years, since about 1940. He apparently has

"Covered Employment" from that time until about 1952. From February 1952 through April of 1956, he drove a truck for Reo Motors, the latter not having a collective bargaining agreement with Local No. 710. This employment period, therefore, is not considered under the Plan as "Covered Employment." From April of 1956 through November of 1967, when he retired, the plaintiff was again employed by employers who had collective bargaining agreements with Local No. 710, thus again accruing "Covered Employment." These latter employers made substantial contributions into the Pension Fund on behalf of the plaintiff pursuant to their collective bargaining agreements. After retirement, the defendants refused plaintiff's request for a retirement pension, notwithstanding his some twenty-three years of covered employment, because he had had a break in "Credited Service" as a result of his employment with Reo for more than three years which precluded crediting him with any employment prior to 1952, and notwithstanding further that his employment with Reo commenced three years before the Pension Fund was even established. He was thus not deemed to have the requisite twenty years of "Credited Service."

[1] The first basis for the defendants' motion to dismiss is that this Court lacks jurisdiction over this complaint. The defendant contends that this Court has no jurisdiction to resolve disputes between parties to a pension plan created pursuant to Section 302. While this statement is correct as to disputes concerning the day-to-day administration of such a plan and trust, it is not determinative in the circumstances of this case.

Subsections (a) and (b) of Section 302 make it unlawful for an employer to make payments to a representative of his employees and for a representative to receive such payments. Subsection (c) (5) carves out an exception to the foregoing provisions for payments made to a trust fund complying with a statutorily enumerated list of requirements which include the following:

(1) the trust fund must be established for the sole and exclusive benefit of employees and dependents;

(2) payments must be held in trust to pay, from principal or income, for such employees' medical care, pensions, illness, etc.;

(3) the detailed basis of payments must be set forth in writing;

(4) employers and employees must have equal representation, with a provision for a neutral person or umpire;

(5) the plan must contain provisions for an annual audit; and

(6) there must be separate trusts for pension and annuity funds.

Subsection (e) of Section 302 provides that district courts of the United States shall have jurisdiction, for cause shown, to restrain violations of this section.

The case law appears to be settled, and the defendants agree, that this Court has jurisdiction to review all allegations regarding a union pension fund that relate to structural violations, by which term is meant violations of the statutory requirements enumerated in Section 302 (c) (5), although we have no jurisdiction to inquire into mere violations of fiduciary obligations or standards of prudence in the ordinary administration of the trust fund. Bowers v. Ulpiano Casal, Inc., 393 F.2d 421, 424 (1st Cir. 1968); Giordani v. Hoffmann, 295 F. Supp. 463, 470 (E.D.Pa.1969); Porter v. Teamsters etc. Funds, 321 F.Supp. 101, 103 (E.D.Pa.1970). Cf., Employing Plasterers' Association of Chicago v. Journeymen Plasterers' Protective and Benevolent Society of Chicago, 279 F.2d 92 (7th Cir. 1960). We must, therefore, determine if plaintiff's claims involve the structural requirements of Section 302 (c) (5).

The defendants categorize plaintiff's suit as one merely involving the interpretation and application of the Pension

Plan adopted by the defendant-trustees. A careful reading of the complaint, however, indicates that the plaintiff specifically alleges that the break-in-service provision of the Pension Plan, which in effect divested him of the contributions made by employers on his behalf, renders the Plan violative of Section 302(c) (5) because the Plan as thus structured is not one for the sole and exclusive benefit of employees of the employers who have made substantial contributions to the Pension Fund. While the plaintiff does not allege the most obvious types of potential structural violations such as siphoning of trust funds for union purposes or lack of an annual audit, he does allege, in effect, that the divesting procedures adopted by the Fund's trustees operate so as to render it not for the exclusive benefit of the employees.

■ The initial issue of jurisdiction is thus easily resolved. When a claim is alleged to arise under the Constitution or laws of the United States, the federal district court must entertain the suit except when the alleged claim appears to be immaterial and made solely for the purpose of obtaining jurisdiction or unless it appears to a legal certainty that the claim is wholly insubstantial and frivolous so far as the Constitution and the laws of the United States are concerned. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). A district court has jurisdiction when the right of a plaintiff to recover under his complaint will be sustained if the Constitution or the laws of the United States are given one construction and will be defeated if they are given another. Wheeldin v. Wheeler, 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963). "Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy." Bell v. Hood, *supra*, 327 U.S. at 682, 66 S.Ct. at 776. We conclude that plaintiff's claims are not frivolous and that this Court, therefore, does possess jurisdiction over his suit insofar as it alleges a structural violation of Section 302.

The defendants next contend that, even if we do possess jurisdiction over this suit, the complaint nevertheless fails to state a claim upon which relief can be granted under Section 302. Taken in the context of the entire complaint, the plaintiff alleges in effect that the Pension Plan provision adopted by the Trustees which results in a loss of Credited Service if an employee is out of Covered Employment for more than three years renders the Plan violative of the Section 302 requirement that the Trust Fund be used for the sole and exclusive benefit of employees, their families and dependents.

We agree with the defendants in their observation that nothing in Section 302 (c) (5) of the Act requires that all the moneys collected in a union pension fund be used for all the employees on whose behalf contributions were made by employers. This agreement, however, does not resolve the primary issue before us, i. e., whether a provision which prohibits certain employees from participating in the union pension fund renders the trust not for the exclusive benefit of the employees.

This issue cannot be resolved without additional relevant information concerning the effect on union members. as a whole of this "break-in-service" provision. · If it prevents a substantial number of the potential beneficiaries from receiving pensions to which they would otherwise be entitled if all their years of Covered Employment were credited to them, the Plan as thus structured might very well not be for the exclusive benefit of employees. Section 302, it is true, was at least partially designed "to prevent employers from tampering with the loyalty of union officials, and disloyal union officials from levying tribute upon employers." United States v. Ryan, 225 F.2d 417, 426 (2d Cir. 1955) (Learned Hand, J., dissenting), rev'd 350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335 (1956), aff'd on remand, 232 F.2d 481 (2d Cir. 1956). It is also true, however, as the Seventh Circuit has recognized, that the legisla-

tive history of Section 302 renders very difficult the dilemma of any attempted court reconstruction of the entire Congressional intent. The Seventh Circuit has stated in this regard:

" * * * The way in which § 302 was presented, however, necessarily causes the legislative history to be lacking in conclusiveness. In both the 79th and the 80th Congress, it came into the consideration of an omnibus labor bill by introduction from the floor of the Senate, so that the committee reports, which usually give the best explanations of how a complicated section is supposed to work, say nothing on the whole subject of § 302 except relatively brief references in minority sections of the reports. There was extensive discussion on the floor, particularly in the Senate, but this history is subject to the usual infirmities, by way of ambiguity, of legislative debates. See, generally, 92 Cong.Rec. 4809, 4893–94, 4897–99, 5040–41, 5277, 5433, 5494–96 (1946); S.Rep.No.105, 80th Cong., 1st Sess. 52 (1947); 93 Cong. Rec. 4678, 4746–53 (1947)." Employing Plasterers' Association of Chicago v. Journeymen Plasterers' Protective and Benevolent Society of Chicago, 279 F.2d 92 (7th Cir. 1960), quoting from Copra v. Suro, 236 F.2d 107, 115 (1st Cir. 1956).

Recognizing the difficulty of defining the scope of Congressional intent in enacting Section 302, we conclude, from the language of that section and from the legislative history as best as can be determined, that Congress, in addition to its concern over disloyal union officials, was equally concerned with the welfare of the individuals who comprise the rank and file of the unions. A pension plan which excluded a sizeable number of union members, with no reasonable purposes behind their exclusion, may, in fact, fail to be for the sole and exclusive benefit of employees as Congress used that term in its exemption to the general prohibition against payment of moneys from employers to labor representatives. Because the plaintiff has alleged and has put into controversy an exclusionary eligibility requirement concerning the defendants' § 302 trust, we cannot at this stage of the proceedings conclusively state that plaintiff will, after pretrial discovery, be incapable of proving facts which will demonstrate that the Pension Plan here involved is not for the sole and exclusive benefit of employees. As such, we may not dismiss plaintiff's complaint for failure to state a claim. Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

We note that the applicable standard for determining whether the Plan may be considered to be for the sole and exclusive benefit of the employees is not entirely clear from prior authority. Although a federal district court does not have the general power to dictate, rephrase, or interfere with the provisions of a trust agreement freely entered into between a union and employers, Moglia v. Geoghegan, 267 F.Supp. 641, 645 (S.D. N.Y.1967), aff'd 403 F.2d 110 (2d Cir. 1968), cert. denied 394 U.S. 919, 89 S. Ct. 1193, 22 L.Ed.2d 453, this is true only so long as the trust is, in the first instance, for the sole and exclusive benefit of the employees. This Court does have the jurisdiction and the obligation to ensure that the letter and the spirit of this statutory condition is fulfilled.

The Court of Appeals for the District of Columbia Circuit has been confronted with the precise issue presented by this case: what standard should be utilized for reviewing an eligibility requirement set by the trustees of a Section 302 trust. That Circuit has concluded that, as Section 302 "explicitly casts authority to create such a fund in trust terms, consequently the scope of court review of trustees' action has been defined as one of determining whether their action was arbitrary and capricious." Roark v. Lewis, 130 U.S.App.D.C. 360, 401 F.2d 425, 426 (1968). See, also, Kosty v. Lewis, 115 U.S.App.D.C. 343, 319 F.2d 744 (1963), cert. denied, 375 U.S. 964, 84 S.Ct. 482, 11 L.Ed.2d 414; Danti v.

Lewis, 114 U.S.App.D.C. 105, 312 F.2d 345 (1962).

We believe that this standard of review is appropriate at least so far as the trustees' actions in establishing the terms of the trust are concerned as distinguished from their day to day administration of it. It seems obvious, for example, that arbitrary and capricious eligibility provisions might be violative of the structural requirement that the trust be for the sole and exclusive benefit of the employees. This standard of review would, on the one hand, prevent the federal courts from becoming reviewing bodies for every routine action taken or regulation promulgated by the trustees of a Section 302 trust, yet would aid in insuring the basic structural integrity of such trusts.

In this connection, it should be noted that alleged fraud, misconduct, breach of fiduciary duty, etc. by trustees of a Section 302 trust may be litigated by the interested party or parties in the state courts just as similar alleged conduct by trustees of other trusts, however created, may be challenged and reviewed. The question of whether the provisions of a Section 302 trust meet the statutory standards or whether the trustees have arbitrarily and capriciously limited participation in the benefits of the trust, however, would appear to be litigable only in the Federal courts.

Another reason exists that precludes us from dismissing the plaintiff's complaint at this stage of the proceedings. It appears obvious that the contested "break-in-service" provision might primarily be designed to strengthen the union by encouraging employees to work only for those truckers who have collective bargaining agreements with Local 710 and to penalize employees who work or have worked for other truckers, even if that employment occurred, as here, prior to the creation of the Pension Fund. If the purposes and effects behind this provision are thus primarily to benefit the union and penalize employees, we clearly are presented with a trust fund that possesses the structural deficiency of not being solely for the benefit of employees. We recognize that this provision may be demonstrated to be reasonable, designed to benefit employees, and, at most, indirectly aid the union. But, at this point, we can only conclude that the allegations of the complaint, viewed most favorably to the plaintiff, require denial of the defendants' motion to dismiss.

The defendants further move this Court to prohibit the maintenance of this suit as a class action. Certain arguments advanced by the defendants on this point are persuasive, but do not preclude, as suggested by the defendants themselves, the bringing of any appropriately limited class action. The plaintiff has not as yet defined his proposed class as other than "all other present and former members of Local 710 similarly situated."

We believe that a class comprised of all union members who have been denied credit for Covered Employment as a result of the "break-in-service" provision would not be feasible or authorized under Rule 23, Fed.R.Civ.P. It is clear that some of the members of the class so described might still qualify for pensions in the future notwithstanding their loss of credit. These people might receive a smaller pension if other union members who will get nothing if the "break-in-service" provision is upheld should become eligible for benefits because of its being declared invalid. It is axiomatic that the interests of the named representatives in a class action must be co-extensive with the interests of all other members of the proposed class. Brotherhood of Locomotive Firemen and Enginemen v. Graham, 84 U.S. App.D.C. 67, 175 F.2d 802, 807 (1948); Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968); Dolgow v. Anderson, 43 F.R.D. 472, 494 (E.D.N.Y.1968); Chafee, Some Problems of Equity 231 (1950). We conclude that various members of a class comprised of all union members who have been denied credit for covered employment due to the

"break-in-service" provision of the Pension Plan do not necessarily have interests co-extensive with the named plaintiff, that the claims of the named plaintiff would not necessarily be typical of this class, and that, for these reasons, the suit could not be properly maintained as an action by this class.

■ This conclusion, however, does not indicate that no class action is feasible or proper. We believe, on the contrary, that a class action is feasible and authorized by the Rules if the class is limited to retired members of Local 710 who, but for the "break-in-service" provision, would have qualified in all other respects for pensions. It is conceivable that discovery will demonstrate that the class should be further limited to those retired members denied participation whose non-covered employment that activated the adverse "break-in-service" provision commenced, as did plaintiff's, *prior* to the inception of the Pension Plan.

A class thus described fulfills all the Rule 23 requirements. Such a class clearly would fall under the authority of Paragraph (b) (2) of Rule 23 which covers situations where the party opposing the class has refused to act on grounds generally applicable to the class. In addition, all four prerequisites for class actions listed in Paragraph (a) of Rule 23 will be met by a class so defined.

It is also conceivable that this class may not fulfill the (a) (1) requirement that the class be so numerous that joinder of all members is impractical. Limited discovery on this and upon any other aspect of the Rule 23 considerations, however, should bring all relevant information on this subject to the surface. *Cf.*, Frankel, "Some Preliminary Observations Concerning Civil Rule 23," 43 F. R.D. 39 (1967); Manual for Complex and Multidistrict Litigation, Sec. 1.6. However, as plaintiff has alleged that the class is too numerous to make joinder of all members practical and because Rule 23(c) (1) authorizes this Court to alter or amend the class definition prior to a decision on the merits, we believe that the class as described above is appropriate. The defendants' motion to dismiss the class action, therefore, will be denied at this time subject to being later raised if any relevant consideration not presently apparent should arise.

An order consistent with the foregoing will enter.