**Juan Sanchez LUGO, Plaintiff,**

v.

**The EMPLOYEES RETIREMENT FUND OF the ILLUMINATION PRODUCTS INDUSTRY et al., Defendants.**

**No. 73–C–663.**

United States District Court,
E. D. New York.

Jan. 17, 1975.

John C. Gray, Jr., Brooklyn Legal Services, Corporation B, Brooklyn, for plaintiff; David S. Preminger, Brooklyn, of counsel.

E. Judson Jennings, Jonathan A. Weiss, Legal Services for the Elderly Poor, New York City, of counsel.

Menagh, Trainor & Rothfeld, New York City, for defendants; Norman Rothfeld, New York City, of counsel.

BARTELS, District Judge.

Plaintiff Juan Sanchez Lugo, a former worker in the Illumination Products Industry, brings this action for declaratory and injunctive relief under § 302 of the Taft-Hartley Act ("Act"), 29 U.S.C. § 186,[1] against the Employees Retire-

---

1. Section 302 of the Taft-Hartley Act, 29 U.S.C. § 186, provides in pertinent part:

"(a) It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—

    (1) to any representative of any of his employees who are employed in an industry affecting commerce; or

    (2) to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce; or

    (3) to any employee or group or committee of employees of such employer employed in an industry affecting commerce in excess of their normal compensation for the purpose of causing such employee or group or committee directly or indirectly to influence any other employees in the exercise of the right to organize and bargain collectively through representatives of their own choosing; or

    (4) to any officer or employee of a labor organization engaged in an industry affecting commerce with intent to influence him in respect to any of his actions, decisions, or duties as a representative of employees or as such officer or employee of such labor organization.

(b)(1) It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value prohibited by subsection (a) of this section.

ment Fund ("Fund") of that industry and the trustees thereof, upon the ground that the Fund is not in compliance with the Act. He claims that two aspects of the agreement establishing the Fund constitute structural defects in violation of the Act, to wit: the failure of the agreement to provide (1) a hearing for an applicant for disability benefits on the issue of his disability, and (2) for vesting of rights to standard retirement benefits before the retirement age insofar that an applicant is required to attain the age of 60 and to have been employed or available for employment by contributing employers for 90 months within the ten years prior to his application. In October, 1973, on defendants' motion to dismiss the complaint, the Court ruled that it has jurisdiction to determine whether the above claims constitute violations of the Act which requires that the Fund be "for the sole and exclusive benefit of the employees." 29 U.S.C. § 186(c)(5). (Lugo v. Employees Retirement Fund of the Illumination Products Industry, 366 F.Supp. 99 (E.D.N.Y.1973)). On October 21, 1974, a trial was held before the Court without a jury to determine whether the agreement was, in fact, "for the sole and exclusive benefit of the employees." Accordingly, the Court makes the following *Findings of Fact and Conclusions of Law.*

## FINDINGS OF FACT

1. Plaintiff was continuously employed in the Illumination Products Industry from 1955 to 1972.

2. Plaintiff left his last position in the industry, at Majestic Inc., 535 Sackett Street, Brooklyn, New York, in April, 1972, because he felt he was physically unable to continue working there.

3. When he stopped working, plaintiff was 50 years old and had worked for more than 90 months within the previous ten years.

### *The Agreement*

4. The Fund is administered by the Joint Retirement Committee ("the Committee") in accordance with the provisions of an Agreement negotiated between the representatives of contributing employers in the industry and the

(c) The provisions of this section shall not be applicable . . . (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents) : *Provided,* That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and *employees and employers are equally represented in the administration of such fund,* together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon and in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement; and (C) such payments as are intended to be used for the purpose of providing pensions or annuities for employees are made to a separate trust which provides that the funds held therein cannot be used for any purpose other than paying such pensions or annuities."

unions representing the workers in the industry.

5. Paragraph 5 of the Agreement provides that "The determination in *good faith* by the Committee of any matter or question under this Agreement shall be final and conclusive." (Emphasis supplied.)

6. Paragraph 18.2(b) provides that the Committee is to be the sole judge of the facts as to whether an applicant is "disabled" to the extent required for eligibility for the Disability Pension Benefit.

7. Paragraph 20(c) requires the Disability Pension application to contain a clause stating that "The Committee has the power to prescribe a medical and/or physical examination (the cost to be born by the Fund), and that the applicant will agree to such an examination before his application will be considered by the Committee."

8. Paragraph 20(a) provides that "The Committee's action in approving or disapproving any application shall be final. A rejected applicant shall have no right or claim of any kind against the Committee, the Union, the Employer, or Employers."

*Plaintiff's Application for Disability Benefits*

9. Plaintiff duly applied for Disability Benefits on April 13, 1972, and, in addition, applied for Standard Retirement Benefits.

10. To be eligible for Disability Benefits, plaintiff was required (1) to have been employed or available for employment by contributing employers for at least 10 years and have an aggregate of 90 months employment within the 10 years immediately preceding his application (the 90/10 requirement); and (2) to be permanently incapacitated or disabled to the extent that he could no longer secure gainful employment.

11. The application contains the following statement: "The applicant agreed to submit to a medical and/or physical examination (the cost to be paid by the Fund) before this application is presented to the Trustees."

12. The reverse side of the application contains the following instruction: "Obtain a letter from Doctor describing your disability in the fullest detail possible."

13. In support of his application plaintiff submitted two letters from his physician, Emily C. Simpson, M. D. The first, dated December 23, 1971, stated that plaintiff was found to have "moderate elevation in his blood sugar" and the second, dated May 22, 1972, stated that plaintiff was being treated for "diabetes melitus" and was in "fair" condition.

14. The Pension Committee of the Electrical Industry maintains a staff of doctors at its Medical Facility, on both a full-time and retainer basis, and these doctors, among other duties, perform examinations in connection with applications for Disability Benefits under the Retirement Plan of the Illumination Products Industry.

15. On May 24, 1972, in accordance with the Fund's procedure, plaintiff was duly examined, pursuant to his disability application, by doctors at said Medical Facility.

16. After examination at the Medical Facility on May 24, 1972, a report was issued by W. T. Kriete, M. D., Medical Director of the Pension Committee, stating that plaintiff "was found to have diabetes as well as a visual disturbance which is correctable by glasses" and that he did not "consider this man disabled."

17. On September 27, 1972, after considering the letters from Dr. Simpson and the report of Dr. Kriete, the plaintiff was found to be ineligible for disability benefits.

18. Plaintiff was given no opportunity to appear in person before the Committee, nor was a hearing held where he or his attorney were able to cross-examine the Fund's doctors or to offer additional evidence of their own.

19. While plaintiff was found to have satisfied the 90/10 requirement, he

was declared ineligible for disability benefits because the Committee found that he was not in fact disabled.

### Plaintiff's Application for Standard Benefits

20. To be eligible for the Standard Pension Benefit, plaintiff was required to attain the age of 60 and, in addition, meet the eligibility requirements in effect at the time he joined the industry in 1955, which required an aggregate of 90 months of employment or availability for employment by contributing employers within the 10 years immediately preceding the filing of his application.

21. Plaintiff was found to be ineligible for the Standard Pension Benefit because he had not attained the age of 60 at the time of his application.

22. The eligibility requirements of the Fund have been increased from time to time for new employees in the industry so that at present, in order to be eligible for the Standard Retirement Benefit, an employee must attain the age of 60 and have been employed or available for employment by contributing employers for 200 months within the 20 years prior to his application.

23. The above requirements are provided primarily for actuarial soundness.

24. Of the 100 largest retirement plans in 1971, 90 had some type of vesting provision whereby a participant acquired rights at certain specified times, as the case may be, in accrued benefits before reaching the retirement age. Sixty-nine of these 90 had a type of deferred vesting whereby the participant would not receive payment until a certain age was reached, and only 17 of the 90 provided for immediate vesting upon termination of participation in the plan.

25. The Retirement Fund of the Illumination Products Industry does not provide for any such vesting and a participant who ceases participation prior to meeting the requirements, has no rights in the Fund.

26. The fact that many of the 100 largest retirement funds provide for vesting in one form or another has, without more, no bearing on the reasonableness or rationality of the structure of the Fund at issue.

### CONCLUSIONS OF LAW

■ 1. The Court has jurisdiction under § 302(e) of the Act to determine whether the provisions of the Agreement here challenged constitute structural defects in violation of § 302(c)(5) of the Act. Lugo v. Employees Retirement Fund of the Illumination Products Industry, *supra.*

■■ 2. The Act was intended "to prevent employers from tampering with the loyalty of union officials, and disloyal union officials from levying tribute upon employers." United States v. Ryan, 225 F.2d 417, 426 (2d Cir. 1955), (L. Hand, C. J., dissenting), rev'd, 350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335 (1956), and Courts must keep this purpose in mind in interpreting the literal language of the Act. "There is no surer guide in the interpretation of a statute than its purpose when that is sufficiently disclosed; nor any surer mark of over solicitude for the letter than to wince at carrying out that purpose because the words used do not formally quite match with it." Federal Deposit Ins. Corp. v. Tremaine, 133 F.2d 827, 830 (2d Cir. 1943), (L. Hand, C. J.). Thus, the fact that the plan to which the employer agrees to contribute might indirectly further the *economic interest of the employer by re-taining* experienced employees, does not prevent it from being "for the sole and exclusive benefit of the employees," where the plan is contained in an agreement freely and openly arrived at by representatives of the employers and employees. Roark v. Boyle, 141 U.S.App. D.C. 390, 439 F.2d 497, 505 (1970).

■ 3. The Act does not confer a general power upon the Court to interfere with the provisions of an agreement freely entered into between the Union and the employers regulating pension coverage and eligibility. Moglia v. Geoghegan, 267 F.Supp. 641 (S.D.N.Y.

1967), affirmed, 403 F.2d 110 (2d Cir. 1968), cert. denied, 394 U.S. 919, 89 S. Ct. 1193, 22 L.Ed.2d 453 (1969).

 4. The absence of a provision for a hearing on plaintiff's application for disability benefits does not constitute a structural defect converting the Fund into one not "for the sole and exclusive benefit of the employees." In this respect the employees are protected from possible disloyalty of the officials administering the Fund by the "good faith" requirement of Paragraph 5 of the Agreement, which requires the Committee to make a *bona fide* determination of disability and to administer the Fund for the sole and exclusive benefit of the employees. Upon the failure of the Committee to comply with this obligation, the employees have ample remedy in the state courts for the Committee's breach of its fiduciary obligation. *Cf.* Insley v. Joyce, 330 F.Supp. 1228, 1234 (N.D.Ill.1971); Bowers v. Ulpiano Casal, Inc., 393 F.2d 421 (1st Cir. 1968); Giordani v. Hoffmann, 295 F.Supp. 463 (E.D.Pa.1969); Porter v. Teamsters, etc., Funds, 321 F.Supp. 101 (E.D.Pa. 1970).

5. Plaintiff's challenge to the requirements for Standard Retirement Benefits is essentially a challenge to the failure of the pension plan to provide for vesting of rights prior to the age of 60. Plaintiff having retired at the age of 50, will not be eligible for a pension when he reaches the age of 60 since he will not have met the 90/10 requirement. The essence of his complaint on this score is that he is denied benefits which others with equal periods of service who have reached the age of 60 will receive. It is not necessary that a plan confer equal benefits upon all employees regardless of their differences in age and periods of service. Nor is it necessary for all pension plans to contain vesting

provisions. See Roark v. Boyle, *supra,* 439 F.2d at 504–507.[2]

 6. The Fund's eligibility requirements for Standard Retirement Benefits have not been shown to be either arbitrary, capricious or unreasonable. Insley v. Joyce, *supra,* 330 F.Supp. at 1233. On the contrary, they appear to be designed in good faith to provide for the actuarial soundness of the Fund.

7. For the reasons stated above, we find that plaintiff has failed to establish any structural defects in the Fund constituting violations of the Act.

8. Since the claims constituting the basis for Federal Court jurisdiction are found to be without merit, the Court declines to take pendant jurisdiction over plaintiff's claims under state law.

Complaint dismissed. So ordered.

---

2. The recent enactment of the Pension Reform Act (The Employee Retirement Income Security Act of 1974), P.L. 93–406, which now requires vesting provisions in pension plans, and the long legislative history leading up to its enactment, offer ample evidence that Congress never viewed § 302 of the Taft-Hartley Act as requiring vesting provisions in pension plans. See Roark v. Boyle, *supra,* 439 F.2d at 504–507.