542 F.2d 1128
 93 L.R.R.M. (BNA) 2550, 79 Lab.Cas. P 11,713,
1 Employee Benefits Ca 1258
 Benjamin R. BURROUGHS, Plaintiff-Appellant,
v.
BOARD OF TRUSTEES OF the PENSION TRUST FUND FOR OPERATING
ENGINEERS et al., Defendants-Appellees.
Benjamin R. BURROUGHS, Plaintiff-Cross-Appellee,
v.
BOARD OF TRUSTEES Of the PENSION TRUST FUND FOR OPERATING
ENGINEERS et al., Defendants-Cross-Appellants.
 Nos. 75-2897, 75-3289.
 United States Court of Appeals,
Ninth Circuit.
 Oct. 4, 1976.
 
 William H. Carder (argued), San Francisco, Cal., for Benjamin R. burroughs.
 Thomas E. Stanton, Jr. (argued), San Francisco, Cal., for defendants-appellees.
 Before WRIGHT and TRASK, Circuit Judges, and WATERS,* District Judge.
 EUGENE A. WRIGHT, Circuit Judge:
 
 
 1
 This case involves two appeals. One is brought by the Board of Trustees of the Pension Trust Fund for Operating Engineers (hereinafter Trustees) from a judgment of the district court holding that the Trustees acted arbitrarily and capriciously in applying retroactively a break-in-employment rule to plaintiff Burroughs so as to deny him pension benefits. Burroughs appeals from the district court's failure to award him attorneys' fees.
 
 I.
 FACTS
 
 2
 The Pension Trust Fund for Operating Engineers was established pursuant to a collective bargaining agreement, dated May 20, 1957, between Local 3 of the International Union of Operating Engineers and the Associated General Contractors of California, Inc. The agreement provided that, commencing January 1, 1958, the employers covered thereby were to make contributions to the pension fund for each hour worked by covered employees.
 
 
 3
 Under the terms of the pension plan, "pension credit" was defined as the number of years of service to the industry accumulated and maintained for each covered employee. "Past service credit" was defined as periods of employment prior to an employee's contribution date, and "future service credit" referred to periods of employment on and after the employee's contribution date. The contribution date for a given employee was defined as either January 1, 1958, or such later date as the Trustees might fix for a particular bargaining group.
 
 
 4
 Burroughs had accumulated 151/4 years of past service credit before 1958. From 1958 to 1972 he acquired 11/2 years of future service credit. He suffered a totally disabling heart attack in 1972 and applied for a disability pension.
 
 
 5
 His application was rejected because, by failing to work at least 350 hours for a contributing employer during any of the years 1958-60, Burroughs had suffered a "break-in-employment" under the terms of the trust agreement. That cancelled all his past service credit and rendered him ineligible for a disability pension.
 
 
 6
 Alleging that he had not received notification of the break-in-employment rule until 1960, at which time it was retroactively applicable to January 1, 1958, Burroughs sued the Trustees for wrongful denial of pension rights in violation of § 302(c)(5) of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 186(c)(5).
 
 II.
 THE DISTRICT COURT'S DECISION
 
 7
 The district court indicated that the break-in-employment rule, when taken together with the provisions of the plan for the vesting of pension credits, was reasonable on its face and that its adoption by the Trustees was not arbitrary and capricious. It held, however, that the application of the rule to Burroughs at the end of 1960 was arbitrary and capricious because Burroughs was not notified of the rule until more than two years after the rule was in effect, cutting off his accrued pension rights.
 
 III.
 SECTION 302(e) JURISDICTION
 
 8
 Section 302 of the LMRA in general forbids an employer to make monetary payments to any representative of its employees and forbids such representative to accept such payments. Section 302(c)(5) creates an exception for payments to an employee pension fund by stating that the general prohibitions of § 302 do not apply:
 
 
 9
 with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents . . . .
 
 
 10
 29 U.S.C. § 186(c)(5) (emphasis added).
 
 
 11
 Section 302(e) grants district courts jurisdiction to determine whether the provisions of a given retirement fund constitute a structural defect in violation of § 302(c)(5). Section 302(e) does not, however, confer general power to interfere with provisions of agreements freely entered into between unions and employers which regulate day-to-day administrative matters of pension coverage and eligibility. Lugo v. Employees Retirement Fund, 388 F.Supp. 997, 1001 (D.C.N.Y.1975).
 
 
 12
 A structural defect is present when a pension plan excludes a sizeable number of union members with no reasonable purpose behind their exclusion, thus failing to satisfy the requirement that the fund shall be for the "sole and exclusive benefit" of all employees. See Insley v. Joyce, 330 F.Supp. 1228, 1233 (D.C.Ill.1971).
 
 
 13
 In its conclusions of law the district court found that the failure of the Trustees to administer the trust in a manner consistent with fundamental due process was in substance tantamount to a basic structural defect and said:
 
 
 14
 (W)hether the unjust exclusion of a pensioner is obtained from the exclusive provisions of the trust fund itself or from the arbitrary and exclusionary implementation procedures of the trustees, the ultimate effect is that the trust is not operated for the "sole and exclusive benefit of the employees."
 
 
 15
 This finding is consistent with the law of this circuit. See Alvarez v. Erickson, 514 F.2d 156 (9th Cir.), cert. denied 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975).
 
 IV.
 ARBITRARY AND CAPRICIOUS ACTION
 
 16
 A break-in-employment rule is not by itself arbitrary and capricious, as the district court implicitly held. This court, as was the court in Kosty v. Lewis, 115 U.S.App.D.C. 343, 319 F.2d 744 (1963), is not concerned with what the eligibility requirements for the pension are, but rather with how the changes in qualifications are made.
 
 
 17
 In Kosty, the plaintiff miner was already eligible for retirement and pension rights at the time the pension eligibility requirement was changed without notice or grace period. As that court stated, the bounds of fundamental fairness were overreached because of "the failure of the Trustees to accord any notice or period of grace which would have afforded some reasonable possibility for an employee like appellant to have elected to retire and take the pension available immediately prior to the change." Id. at 749.
 
 
 18
 Burroughs' pension had not vested when the negotiated pension plan went into effect, although it would have vested in 1966 had the break-in-employment not occurred. Pension rights need not be vested, however, prior to a change in qualification requirements before the change can be deemed arbitrary and capricious. In Lee v. Nesbitt, 453 F.2d 1309 (9th Cir. 1971), plaintiff seaman had been denied a retirement pension because at the time the break-in-employment rule was implemented he had not reached retirement age, although he had completed his minimal employment requirement. This court found such action to be arbitrary and capricious.
 
 
 19
 As the teachings of Kosty and Lee thus indicate, it was fundamentally unfair for the Trustees to apply the break-in-employment rule to employees such as Burroughs who had no notice of its existence and hence no reasonable opportunity to protect themselves from its impact during the years to which it was retroactively applied. As the district court stated in its conclusions of law:
 
 
 20
 (S)ince the Break-in-Employment Rule by its terms allows a participant three years in which to accumulate the required minimum hours of contributory employment . . . plaintiff should have been allowed three years in which to accumulate said required minimum hours from the date plaintiff was put on notice of the Rule.
 
 V.
 ATTORNEYS' FEES
 
 21
 As emphasized in Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), attorneys' fees are not ordinarily recoverable by the prevailing litigant in the absence of statutory authorization. Section 302 of the LMRA gives no such authorization. Under the historic equity jurisdiction of federal courts, however, some exceptions to the general rule have arisen: where a common fund or common benefit has been created by the prevailing litigant, Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); where there has been bad faith by the losing party, Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962); or where there has been willful violation of a court order, Toledo Scale Co. v. Computing Scale Co., 261 U.S. 399, 43 S.Ct. 458, 67 L.Ed. 619 (1923).
 
 
 22
 Under the common fund exception, courts originally permitted a plaintiff to recover attorneys' fees when his action in bringing suit resulted in the recovery or establishment of a fund in which others had the right to share. In Mills v. Electric Auto-Lite Co., supra the Court expanded this doctrine, holding that there was no need for the creation of an actual fund as long as a "substantial benefit" of some kind had accrued to the enriched class and the court had "jurisdiction over an entity through which the contribution can be effected." Alyeska, supra, 421 U.S. at 276, 95 S.Ct. at 1631 (Marshall, J., dissenting). It is argued by appellant Burroughs that the common benefit rationale should apply here.
 
 
 23
 In this case, however, no definite class of beneficiaries has been ascertained. It is argued that any other beneficiary of the pension plan who incurred a break-in-employment prior to December 31, 1963, the end of the third full year after notification to the members of the existence of the break-in-employment rule, will be in a position to take advantage of the ruling here. The Supreme Court, however, has identified a factor common to all its common-benefit decisions which is not present. It stated:
 
 
 24
 In this Court's common fund and common benefit decisions, the class of beneficiaries was small in number and easily identifiable. The benefits could be traced with some accuracy, and there was reason for confidence that the costs could indeed be shifted with some exactitude to those benefitting.
 
 
 25
 421 U.S. at 265, n. 39, 95 S.Ct. at 1625.
 
 
 26
 In this case, no records have been maintained which would have revealed the number or identity of persons benefitted by Burroughs' action. The class of beneficiaries is thus of indeterminable size and not easily identifiable. The decision of the district court is therefore affirmed.
 
 
 
 *
 Honorable Laughlin E. Waters, United States District Judge of the Central District of California, sitting by designation