**Frank J. SOUZA, for himself and on behalf of all others similarly situated, Plaintiffs,**

v.

**The TRUSTEES OF the WESTERN CONFERENCE OF TEAMSTERS PENSION TRUST, collectively, and as constituted from time to time, Defendants.**

**No. C-73-1589 WHO.**

United States District Court, N. D. California.

Aug. 16, 1978.

R. J. Wolf, San Rafael, Cal., John A. Cochrane, Cochrane & Bresnahan, St. Paul, Minn., for plaintiffs.

Pillsbury, Madison & Sutro, Noble K. Gregory, Dennis K. Bromley, C. Douglas Floyd, San Francisco, Cal., for defendants.

OPINION

ORRICK, District Judge.

Plaintiff Souza, a member of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Teamsters"), applied to defendants, The Trustees of the Western Conference of Teamsters Pension Trust ("Trustees"), for retirement benefits. When his application was denied, he filed this class action, alleging that the pension plan's age requirement violated Section 302(c)(5) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 186(c)(5). This case is now before the Court on defendants' motion for summary judgment. For the reasons that follow, defendants' motion is denied.

I.

The terms of the Teamsters' pension plan specify that before an employee is eligible for vested retirement benefits he must have worked a minimum of 15 years of service and 3,000 covered hours,[1] and must have attained a requisite age of 52[2] before a

---

1. A "covered hour" is defined by the pension plan as an hour of employment with respect to which an employer has paid pension contributions to the trust fund.

2. Prior to 1969 an employee had to work until age 52 without a break in service. In 1969 the age requirement was reduced to 45 years of age without a break in service.

break in service.[3] If an employee fulfills these requirements, his pension rights will vest and he becomes eligible to receive pension payments at age 60. Plaintiff, at the time of application, had worked 22,848 "covered hours" during a period of time representing more than 22 years of unbroken service, well over the minimum requirements. However, he was denied benefits under the pension plan because he had a break in service at age 48, at a time when the terms of the plan defined age 52 as the requisite age for eligibility.

In this action, plaintiff is challenging the application of the "age-at-break-in-service" requirement to persons who have met the other requirements of the plan. He claims the age requirement is arbitrary and unreasonable, and thus in violation of Section 302(c)(5) of the LMRA. The Court has conditionally certified a class consisting of all former employees with at least 15 years of unbroken service and 3,000 hours of covered employment who were or may be denied vested retirement benefits solely because they had not attained a particular age at the time they suffered a break in their service. *Souza v. Scalone*, 64 F.R.D. 654 (N.D.Cal. 1974).

## II.

Section 302 of the LMRA prohibits an employer from making monetary payments to any representative of its employees, and prohibits labor representatives from accepting such payments. This provision was designed to prevent employers from compromising the loyalty of union officials and to eliminate the opportunity for union extortion of funds from management. *Alvares v. Erickson*, 514 F.2d 156, 164 (9th Cir. 1975), *cert. den.*, 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975). Section 302(c)(5) contains an important exception to this rule, permitting payments to an employee welfare or pension fund. Thus, the general prohibitions of Section 302 do not apply

> "with respect to money or other thing of value paid to a trust fund established by such representative, for the *sole and exclusive benefit of the employees* of such employer, and their families and dependents * * *." 29 U.S.C. § 186(c)(5) (emphasis added).

Federal district courts have jurisdiction to restrain violations of Section 302. 29 U.S.C. § 186(e).

The "sole and exclusive benefit" phrase contained within Section 302(c)(5) has been the theoretical basis for numerous lawsuits challenging the denial of pension benefits. The above-quoted language has been interpreted so as to give federal courts jurisdiction to determine whether challenged provisions of a given pension fund constitute a "structural defect" in violation of Section 302(c)(5). *Burroughs v. Board of Trustees of the Pension Trust Fund for Operating Engineers*, 542 F.2d 1128, 1130 (9th Cir. 1976). However, it is also generally agreed that there does not exist a general judicial power to interfere with the day-to-day fiduciary administration of such welfare and retirement funds.[4] See *id.; Lugo v. Employees Retirement Fund of the Illumination Products Industry*, 529 F.2d 251, 255 (2d Cir. 1976), *cert. den.* 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976); *Bowers v.*

---

**3.** Under the plan provisions and regulations in effect from the beginning of the plan in 1955 through 1975, a covered employee incurred a "break in service" at the end of any calendar year if in the two calendar years ending with such calendar year he has had less than 600 covered hours. In 1969 the rule was modified such that an employee who had accumulated 7,500 hours would not incur a break in service unless he failed to attain 600 covered hours in a three-year period.

Effective January 1, 1976, the Employee Retirement Income Security Act required all plans to adopt one of three new vesting schedules. The defendants opted for the "100% vesting after ten years" requirement.

**4.** Some of the older decisions took an expansive view of federal jurisdiction under Section 302 holding that there does exist power to supervise matters of welfare trust administration. See cases discussed in *Bowers v. Ulpiano Casal, Inc.*, 393 F.2d 421, 424 n.3 (1st Cir. 1968). However, the "structural defect" limitation on federal jurisdiction has now gained wide acceptance.

*Ulpiano Casal, Inc.*, 393 F.2d 421, 424–26 (1st Cir. 1968). It is the trustees of the pension plan who have the authority to set coverage and eligibility rules, and to conduct the fund's business affairs. *See Pete v. United Mine Workers of America Welfare & Retirement Fund of 1950*, 171 U.S. App.D.C. 1, 517 F.2d 1275, 1283 (1975).

While the foregoing principles are easy to articulate, courts have taken divergent approaches in developing and applying the concept of "structural defect." The most common formulation of the test for "structural defect" is whether the trustees have written unreasonable conditions of eligibility which arbitrarily exclude employees from benefits; or whether the trustees have applied reasonable rules in an arbitrary or capricious manner. *See, e. g., Johnson v. Botica*, 537 F.2d 930, 935 (7th Cir. 1976); *Alvares v. Erickson, supra*, 514 F.2d at 166–67; *Roark v. Lewis*, 130 U.S. App.D.C. 360, 401 F.2d 425, 427 (1968). Because many courts hesitate to intervene into a private contractual relationship and alter the actuarial assumptions upon which such pension plans are based, the above-described test has often proven to be a showing too difficult for plaintiffs to make. For example, in *Gaydosh v. Lewis*, 133 U.S.App.D.C. 274, 410 F.2d 262 (1969), the challenged pension plan provided that a retiree was eligible for a pension only if he had 20 years of service in the coal industry and had reached age 60. When Gaydosh retired, he had satisfied the 20 years of service requirement, but had not yet reached the vesting age of 60. Subsequently, before plaintiff reached 60, the defendants changed the rules so as to completely disqualify plaintiff for a pension. The D.C. Circuit held that the Trustees' action was not arbitrary or capricious, because plaintiff had not attained age 60 and because such age requirement was reasonable. The court stated, without investigation, that the age 60 vesting requirement was justified by economic considerations:

"The age requirement is not merely a procedural device, arbitrarily set and easily waived. It is something more. Economic reality requires a reasonable cut-off date as to age lest the fund be exhausted by comparatively premature retirement. * * * [E]quity will not interfere with reasonable applications of the trustees' discretion under the Trust Indenture. The function of the trustees, on the very face of the indenture, is to preserve the vitality of the fund and to effectively apply its worth to the benefit of as many intended employees as is economically possible." *Id.* 133 U.S.App.D.C. at 277–78, 410 F.2d at 265–66.

If this Court followed such an approach in the instant case, summary judgment for the defendants could be granted without further ado.

However, several courts have suggested a somewhat different test for determining whether a pension plan has a "structural defect," namely, whether the trustees have approved a pension plan which excludes a sizeable number of union members, with no reasonable purposes behind their exclusion. Such a plan has been held structurally defective in violation of the Section 302(c)(5) requirement that the fund be for the "sole and exclusive benefit" of all employees. *Mosley v. National Maritime Union Pension & Welfare Plan*, 438 F.Supp. 413, 423–24 (E.D.N.Y. 1977); *Insley v. Joyce*, 330 F.Supp. 1228, 1233 (N.D.Ill. 1971). *See also Knauss v. Gorman*, 433 F.Supp. 1040, 1045 (W.D.Pa. 1977). The rationale underlying this test is set out in *Mosley*:

"If available funds are not applied to the benefit of employees who have contributed to the fund, and the economic needs of the fund do not require that they be withheld, the specific language of § 302(c)(5) is violated. There is no significant difference, in terms of complying with the 'sole and exclusive benefit' provision, between withholding pension funds for no reason, and applying them for the benefit of persons other than employees. And it follows that § 302(c)(5) requires that the pension funds be applied for the benefit of *as many* employees as is economically possible. For example, it might be arbitrary and capricious to confer, without economic justification, pen-

sion benefits on a very few employees with extremely long service while denying benefits to a great number who worked substantial periods and thus had contributed to the pension fund through their labor. The loss of pension rights by significant numbers of employees with many years of service suggests an imbalance in a pension fund that is amenable to correction under § 302(c)(5)." 438 F.Supp. at 424.

Viewed in one light, this "sizeable exclusion/reasonable justification" test is nothing more than the logical extension of the "arbitrary and capricious" standard. But it should also be evident that the *Mosley* standard will require more than cursory judicial scrutiny of the numbers of union members excluded from plan benefits and of the economic justification proffered for such exclusions; in the past, courts often assumed automatically that any such eligibility rules were based on sound actuarial calculations.

As is evident from the various comments made by the *Mosley* court, this definition of "structural defect" would also appear to hold the potential for a more interventionist approach than has generally occurred in the past under the "arbitrary and capricious" standard. *See id.* at 425–27.

### III.

The Ninth Circuit's pronouncements regarding the lawfulness of pension plan eligibility rules under § 302(c)(5) of the LMRA do not lend themselves to easy synthesis. In *Wilson v. Board of Trustees of the Pension Trust Fund for Operating Engineers,* 564 F.2d 1299 (9th Cir. 1977), the plaintiff union member contended that the trust fund's break-in-employment rule, as applied to him, was arbitrary and unreasonable. There, pension credits were vested only if a person had accumulated 10 years of service and had reached age 55. When Wilson voluntarily left covered employment, he had achieved the requisite 10 years of service, but was only 46 years old. Consequently, his pension credits were not vested, the break-in-employment rule cancelled all his accumulated service, and he became ineligible for any pension benefits. The Ninth Circuit upheld the vesting and break-in-employment rules as applied to Wilson, evincing a marked reluctance to inquire too deeply into the actuarial underpinnings of the challenged pension plan:

"It may well be, as Wilson insists, that the actuaries who designed the Fund never considered the possibility of relieving persons such as Wilson from the consequences of the break-in-employment rule. This provides no justification for our intervention almost two decades after the Fund's inception to redesign it in a manner that conforms to our imprecise notions of actuarial soundness. Wilson's failure to qualify for the disability benefits he seeks undoubtedly makes funds available for other beneficiaries of the Fund and the consequence is unmistakably in accordance with the terms of the Fund. We cannot say that a Fund so operating is unreasonable and arbitrary. Rules in many settings frequently overreach in order to secure their objectives with certainty. This does not in all circumstances make them unreasonable or arbitrary. One must weigh the extent of the overreaching against the importance of certainty. We have done this and find the overreaching, if such it be, in this case tolerable and neither unreasonable nor arbitrary." *Id.* at 1302.

The Ninth Circuit similarly sustained a pension plan which combined a 15 year length-of-service requirement with an age 55 cutoff. *See Giler v. Board of Trustees of Sheet Metal Workers Pension Plan of Southern California,* 509 F.2d 848 (9th Cir. 1975). It is largely on the basis of these two cases that defendants urge summary judgment in their favor. Since the Ninth Circuit has held that an age 55 requirement, in conjunction with length of service provisions, is valid, defendants argue it follows, *a fortiori*, that the age 52 requirement in the instant case is also reasonable and lawful.

However, life is not always so simple. The Ninth Circuit has approved the "sizeable exclusion/reasonable justification" standard for determining whether a pension plan is structurally deficient:

"A structural defect is present when a pension plan excludes a sizeable number of union members with no reasonable purpose behind their exclusion, thus failing to satisfy the requirement that the fund shall be for the 'sole and exclusive benefit' of all employees. *See Insley v. Joyce,* 330 F.Supp. 1228, 1233 (D.C.Ill. 1971)." *Burroughs v. Board of Trustees of the Pension Trust Fund for Operating Engineers, supra,* 542 F.2d at 1131.

The adoption of this test would seem to preclude a judgment on the merits until evidence has been adduced with respect to (1) the number of union members excluded from benefits as a result of the age 52 requirement and (2) the justification (economic or otherwise) that can be made in defense of such exclusions. *See Mosley v. National Maritime Union Pension & Welfare Plan, supra,* 438 F.Supp. at 426–27. It is not clear to this Court how the Ninth Circuit intended the non-interventionist "arbitrary and capricious" approach of *Wilson* and *Giler* to be combined with the "sizeable exclusion/reasonable justification" test enunciated in *Burroughs, Insley* and *Mosley.*

Equally perplexing is the distinction drawn in *Lee v. Nesbitt,* 453 F.2d 1309 (9th Cir. 1971), between voluntary breaks in service and involuntary breaks in service. In *Nesbitt,* eligibility was triggered when the union member reached 60 years of age and built up a minimum of 15 years in covered employment. However, the pension plan also provided that if the applicant had suffered a break in service, as defined by that plan, all previous pension credits would be cancelled. Plaintiff Lee conceded that he had had a break in employment, but argued that the unavailability of employment caused this deficiency. The court held that the eligibility provisions were unreasonable, to the extent that an employee was denied benefits because of an involuntary interruption in employment, after said employee had satisfied the length of service require-

ment. Defendants attempt to distinguish *Lee v. Nesbitt* on the facts. They further note that the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.,* which was enacted after lengthy and careful congressional study, makes no distinction between voluntary and involuntary breaks in service. It appears that the Ninth Circuit stands alone among the various Circuit Courts of Appeal in relating the lawfulness of a break-in-service rule to the voluntariness of the union member's break.[5] Nonetheless, the Ninth Circuit in both *Wilson v. Board of Trustees, supra,* 564 F.2d at 1301, and *Giler v. Board of Trustees, supra,* 509 F.2d at 849, steadfastly adhered to this voluntary-involuntary distinction.

### IV.

Out of this potpourri of case law, several conclusions emerge. Neither plaintiff's position, that *any* age requirement would be arbitrary and unreasonable, nor defendants' position, that age requirements are lawful *per se,* is tenable. Plaintiff is proven incorrect by *Wilson v. Board of Trustees, supra,* and *Giler v. Board of Trustees, supra.* Moreover, the very fact that ERISA, an exhaustive and monumental pension reform statute, permits an age requirement to be imposed under certain conditions would indicate that the LMRA, enacted for the primary purpose of controlling union corruption, should not be interpreted in a way that prohibits all age cutoffs. On the other hand, defendants go too far in arguing that *any* age requirement is lawful. After all, *Lee v. Nesbitt, supra,* held that an age requirement of 60, which was the time for retirement in the *Nesbitt* situation, is unlawful, at least when the interruption in employment is involuntary. It should also be noted that the age requirement contained within ERISA is considerably easier to satisfy than the age 52 rule under attack here.[6] It is, therefore, not possible to infer

---

5. To the extent that other courts have even considered the voluntary-involuntary distinction, they appear to have rejected its validity. *See Johnson v. Botica,* 537 F.2d 930 (7th Cir.

1976); *Knauss v. Gorman,* 433 F.Supp. 1040 (W.D.Pa. 1977).

6. Effective January 1, 1976, ERISA required all pension plans to adopt one of three alternative

from the mere existence of an ERISA age cutoff, that any age requirement must be acceptable.

It has already been pointed out that the Ninth Circuit has, at various times, approved both the "arbitrary and capricious" and the "sizeable exclusion/reasonable justification" standards for structural defects. Thus, the prudent course for this Court to follow is to pay heed to both tests. Accordingly, wary though this Court is of being dragged into a quagmire of actuarial minutiae, it is bound to carry the *Burroughs* "sizeable exclusion/reasonable justification" language to its logical conclusion and, therefore, must examine the effect that the age 52 requirement has upon the distribution of pension benefits. If, compared to the total number of potential recipients, a sizeable number of persons is excluded, this Court will then determine whether there exists a "reasonable justification," *e. g.*, the economic needs of the pension trust. If none exists, then the restrictive eligibility provision is a structural defect, violates Section 302(c)(5) of the LMRA, and must be invalidated. If a reasonable justification can be offered, there is no violation and the eligibility requirement may stand.

Although arguments can be made in favor of the voluntary versus involuntary break-in-service distinction, this Court remains dubious of the continued viability of this doctrine. However, we will reserve ruling on this question pending the results of our further hearing.

At an earlier hearing, we requested the parties to submit exhibits and affidavits which would demonstrate the reasonableness or unreasonableness of the Teamsters pension plan's age requirement. The parties' responses provided some facts, but this data is incomplete and must be expanded as indicated *infra*. Plaintiff submitted an affidavit from an actuarial expert who simply reiterates certain phrases contained in *Mosley v. National Maritime Union Pension &*

*Welfare Plan, supra*. The plaintiff then sets out a table listing the "incremental cumulative liability of providing vested retirement benefits to excluded employees," the significance of which cannot be deciphered without detailed explanation. The affidavit, however, did provide a useful tally of the number of employees who were excluded from vested retirement benefits solely because of the age requirement. Defendants' data was of a less exact nature.

Since both parties ultimately derive their figures from the same data base, they are directed to develop a joint statement of undisputed facts (or estimates) regarding (1) the number of employees who were excluded from vested retirement benefits because of the age 52 requirement for each year between 1958 and 1975; (2) the number of employees who would have been excluded during those years had the age requirement been lower, *e. g.*, 50, 48, 45; (3) some appropriate figure against which to compare the number of excluded employees, *e. g.*, the number of members contributing to the pension plan at any given time, the number of employees who ultimately qualify for benefits; (4) the incremental financial burden to the pension plan if the age requirement were lowered to 50, 48, 45; and (5) the ability of the pension plan to absorb such financial burden. Each party will furnish the Court additional data and calculations so the Court can decide the ultimate issue under the *Mosley* test, namely, whether the additional financial burden justifies the "sizeable" exclusion of potential recipients.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion for summary judgment is denied.

2. The parties will attend an in-chambers status conference on Wednesday, August 30, 1978, at 4:30 p.m., to discuss (a) methods for developing the above-described data

---

minimum vesting standards: (a) 100% vesting after 10 years of service; (b) graded vesting— 25% after 5 years of service, rising to 100% vesting after 15 years; or (c) a "rule of 45," under which a participant must be 50% vested

when the sum of his age and years of service equals 45, grading up to 100% when the sum of his age and years of service equals 55. 29 U.S.C. § 1053(a)(2).

needs; (b) additional or alternative forms of data which would assist this Court in determining whether the defendants' pension plan is structurally defective, and (c) precisely what issues of fact must be tried.