William JOHNSON, Plaintiff-Appellant,

v.

Joseph BOTICA et al., Defendants-Appellees.

No. 75-1606.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 6, 1976.

Decided July 2, 1976.

George E. Faber, Jeffrey Lawrence, Chicago, Ill., for plaintiff-appellant.

Charles Orlove, Stephen E. Crable, Chicago, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, PELL, Circuit Judge, and EAST, Senior District Judge.*

PELL, Circuit Judge.

This case arose out of the denial of William Johnson's application for a disability pension by the Structural Iron Workers Local No. 1 Pension Trust Fund. After his pension was denied, Johnson filed a four-count complaint against the Trustees of the Pension Fund. The Trustees made successive motions to dismiss the complaint; and the district court, treating the motion to dismiss as one for summary judgment, in an unreported memorandum opinion granted summary judgment on all counts in favor of the defendants. The two major issues in this appeal which followed are 1) whether the trial court erred in exercising jurisdiction over this matter and 2) whether the trial court erred in concluding that the Trustees had not been acting in an arbitrary and capricious manner in setting up the pension plan or in construing and applying its provisions.

## I. Background

On August 24, 1966, Structural Iron Workers Union Local No. 1 (hereinafter referred to as "Union") and an association of employers entered into an agreement and declaration of trust creating the Pension Trust Fund effective on October 1, 1966. By the existing labor agreement, employers agreed to make contributions to the Fund on behalf of employees covered by said labor agreement. On December 21, 1966, the Trustees, the defendants in this litigation, adopted a Pension Plan setting forth eligibility requirements for a disability pension.

Under the terms of the Pension Plan, a disabled person is eligible for a disability pension if he has acquired a minimum num-

---

* Senior District Judge William G. East from the District of Oregon is sitting by designation.

ber of fifteen years of work credits either prior to October 1, 1966, ("Past Service Credits") or after that time ("Future Service Credits"). Under Article III, Section 2(a)(3) of the Plan, an employee is entitled to past work credits only if, after October 1, 1966, he

> was actively engaged in Covered Employment for a sufficient length of time to accumulate at least two (2) quarters of Future Service Pension Credits in the period October 1, 1966 to September 30, 1968.

In short, an employee would receive credit for employment before the Plan came into existence if he worked at least for two quarters in accordance with a formula giving such credit by working from 500 to 749 hours in a calendar year during the two-year period immediately following the inception of the Plan.

The plaintiff suffered a heart attack on June 23, 1967, which rendered him totally and permanently disabled within the meaning of the Plan. From the critical effective date of the Plan, October 1, 1966, to the date of disability, June 23, 1967, Johnson worked but 239 hours in covered employment. Accordingly, under the terms of the Plan, he was not sufficiently actively engaged in Covered Employment[1] to be entitled to Past Service Credit. It is undisputed that the sole reason the Trustees denied Johnson's application for a disability pension was that he failed the active engagement condition for eligibility specified in Article III, Section 2(a)(3).

## II. Jurisdiction

In its grant of summary judgment on the merits in favor of the defendant Trustees, the district court initially confronted the argument that § 302 of the Taft-Hartley Act, 29 U.S.C. § 186, did not confer jurisdiction upon the court. The court observed that the plaintiff's complaint alleged that Section 2(a)(3) of the Pension Plan "structurally violated 29 U.S.C. § 186(c)(5) in that it is not for the sole and exclusive benefit of employees. . . ." The court recognized that Section 302(e), 29 U.S.C. § 186(e), confers jurisdiction on the district courts to restrain violations of the statute, and it observed that it would not review an alleged single abuse or misapplication of a facially adequate plan under the jurisdiction so conferred. Instead, the court followed the guidelines set forth in *Moglia v. Geoghegan,* 267 F.Supp. 641 (S.D.N.Y. 1967), aff'd, 403 F.2d 110 (2d Cir. 1968), cert. denied, 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453 (1969), and ruled that the allegation of a "structural defect" in the terms of the Plan allowed it to take jurisdiction of the case.[2]

We conclude that the district court correctly determined that it had jurisdiction under Section 302(e), 29 U.S.C. § 186(e). The courts have consistently recognized that Congress did not intend to burden the courts with claims as to whether a pension benefit was correctly or incorrectly denied, but the vast majority of courts have also held that jurisdiction at least extends to deciding whether a pension plan is arbitrary, capricious, or in some way contrary to the sole and exclusive benefit of employees, *E. g., Lugo v. Emp. Retire. Fund of Illumination Prod. Ind.,* 529 F.2d 251 (2d Cir. 1976), cert. filed, 44 U.S.L.W. 3727 (1976); *Bowers v. Moreno,* 520 F.2d 843 (1st Cir. 1975); *Alvares v. Erickson,* 514 F.2d

---

1. Under Article 1, Section 7, of the Plan, Covered Employment was defined as employment as to which an employer was obligated to contribute to the Pension Trust Fund subsequent to October 1, 1966. For periods prior to that date, the employment would be deemed "covered" if it was work which if performed after the October 1966 date would have necessitated contributions to the Fund.

2. The district court observed that the allegation posed a question of federal law which was not insubstantial, nor immaterial, nor did it appear to be made solely for the purpose of obtaining jurisdiction. The district court recognized the distinction between the question of jurisdiction and the merits, the latter only being subject to consideration after determining the presence of jurisdiction. We do not read the district court's opinion as approving a bare-bones conclusionary averment of statutory violation as being per se sufficient to give jurisdiction.

156 (9th Cir. 1975), *cert. denied,* 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106.

Thus, in *Lugo,* the Second Circuit recognized that Section 302(e) had been the focus of considerable litigation and that several controversies about its meaning had developed. The *Lugo* court noted that the Second Circuit had joined the courts that had taken a narrow view of the scope of Section 302(e). Nonetheless, it concluded that Lugo's allegation that the trust fund was not for the sole and exclusive benefit of the employees provided a sufficient jurisdictional predicate for the court to decide the case. 529 F.2d at 255–56.

In *Alvares,* the Ninth Circuit noted the ambiguous legislative history regarding the scope of federal jurisdiction but observed that the more recent cases

> have recognized a distinction between actions involving "structural" deficiencies in the relevant trust which cause it to violate the "sole and exclusive benefit" provisions of § 302(c)(5) and actions involving only questions of day-to-day fiduciary administration of welfare and pension funds. 514 F.2d at 165.

After setting forth a cogent discussion of the cases, the *Alvares* court accepted the structural violation concept of federal jurisdiction for reasons akin to those later approved in *Lugo, supra.*

Even those courts which have opted for a narrower reading of § 302(e) have recognized the viability of the structural violation test. In *Bowers,* the First Circuit discussed its approach to the structural deficiency concept. It referred to a statement in an earlier appeal arising out of the same litigation as expressing the proper standard to apply in testing the jurisdictional phase of the case:

> . . . [O]ur statement in *Bowers v. Ulpiano Casal, Inc.* [393 F.2d 421, 424 (1st Cir. 1968)] . . . described the violations of § 302 subject to restraint by a district court as those constituting "violations of basic structure, as determined by the Congress, not violations of fiduciary obligations or standards of prudence in the administration of the trust fund."

This is admittedly a severe standard, but one which we concluded was compelled by legislative history and followed by the majority of cases. 520 F.2d at 846. On the record before it, the *Bowers* court could not say that the alleged breaches of fiduciary duty or breaches of contract reflected any structural defects in the Fund. Accordingly, it affirmed the district court's declination of jurisdiction under Section 302. *Id.*

Concededly, there are some analytic difficulties in the use of the structural deficiency standard as a measure of federal jurisdiction. We need not resolve the structural deficiency versus fiduciary administration dichotomy problem, if it is a problem in defining a sound basis for jurisdiction. See *Alvares, supra* at 166 n. 5. In the present case, we conclude that the express allegations in the complaint provided a sufficient predicate for the district court's acceptance of § 302 jurisdiction. *Cf. Lugo, supra* at 255–56. Accordingly, we need not consider the plaintiff's alternative argument that 28 U.S.C. § 1331 was a proper jurisdictional basis for the suit.

### III. Propriety of Summary Judgment

There was an agreed statement of uncontested facts in this case. The appellant argues that summary judgment in favor of the defendants was improper in that he was not given appropriate notice that the Trustees' motion to dismiss was to be treated as one for summary judgment. The appellant further asserts the issue of Johnson's *involuntary* failure to comply with Section 2(a)(3) was clearly raised by the pleadings and that he could not predict that the trial court would make a factual inference that his failure to work 500 hours after the effective date of the pension plan was *voluntary.*

We think this argument is essentially meritless. Although the memorandum decision referred to cases where voluntary or involuntary withdrawal from covered employment appeared as a basis of decision, the district court did not rest its decision on those cases or their reasoning. After direct

citation of *Lee v. Nesbitt,* 453 F.2d 1309 (9th Cir. 1972), and *Giler v. Board of Sheet Metal Workers of So. Cal.,* 509 F.2d 848 (9th Cir. 1975), the court explained:

> Moreover, none of the inequities present in those cases is present here. Consequently, the court finds that the plan is not defectively arbitrary under § 186(c)(5).

We read this language as an indication that the court was not relying upon the involuntary-voluntary distinction but rather upon its independent judgment that the terms of the pension plan were not arbitrary or capricious.

 Under Fed.R.Civ.P. 52(a), findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56. An exposition of the rationale of a decision that indirectly refers to factual issues provides no basis for reversal where the district court properly notes that an agreed statement of uncontested facts includes "all the material facts necessary to resolve this lawsuit." We conclude that there was no violation of that part of Fed. R.Civ.P. 12(b) which provides that when the court elects to treat a motion to dismiss as a motion for summary judgment all parties shall be given a reasonable opportunity to present all material made pertinent to such a motion by Rule 56. It has not been demonstrated that there was a genuine issue as to any material fact.

## IV. The Merits

### A. Count I

 It is well settled that the trustees of a pension plan such as that involved in this case have full authority with respect to questions of coverage and eligibility. See *Pete v. United Mine Wkers. of Am. Welf. & R. F. of 1950,* 171 U.S.App.D.C. 1, 517 F.2d 1275, 1283 (1975). The role of the courts is limited to ascertaining whether the Trustees' broad discretion has been abused by the adoption of arbitrary or capricious standards. *Id.*

In the present case, the plaintiff-appellant contends that Article III § 2(a)(3) discriminates against a substantial number of employees by causing a forfeiture of substantial past service pension credits and that, therefore, it is not for the sole and exclusive benefit of the employees who make the contributions within the meaning of the statute and the decided cases. It is undisputed that Johnson's application was denied because he had failed to meet the 500 hours of active engagement in covered employment required by the disputed section. The appellant argues that it simply makes no rational sense to take sixteen (16) years past work credit away from an employee for failure to have the two quarters Future Service Credits. The gravamen of Count I is that § 2(a)(3) causes a manifest injustice to all those persons who became disabled shortly after October 1, 1966, and who thus were unable to meet the requirements of the required number of hours of active work.

In our judgment, the plaintiff's assertion that he was deprived of, denied, and required to sacrifice over sixteen years of past service pension credit totally disregards the distinction between his service in the industry and the Pension Plan definition of Past Service Credit. The fact that Johnson was a member of the Union and worked in the industry for sixteen years does not constitute "Past Service Credit" as defined and set forth in the Pension Plan. Indeed, there may well be a number of iron workers who contributed much more time to the Union and the industry but for some reason lost their employment, *e. g.,* death, discharge, resignation, before the Pension Plan came into existence. Accompanying and not-to-be disregarded integrals of the situation of such employees, including plaintiff, is that their work was performed during the non-pension period without expectation of or claim of right to the acquisition of pension payments and without contribution by their employers to a fund which obviously is an essential requisite for the payment of money. Clearly, such iron workers are not eligible for a pension merely because they performed work in the industry, no matter how extensive their work may have been prior to the existence of the

Plan. We agree with the defendant Trustees that Johnson's connection with the Union and the industry before the Plan came into existence is irrelevant in the absence of future credit.

Under the terms of the Plan, Johnson never met the qualifications for "Past Service Credit." He could not be deprived of something to which he was not entitled in the first instance. Undoubtedly, the denial of a pension because of failure to meet the specified requirements of the Plan works economic hardship on Johnson or others similarly situated.[3] But the essential focus of legal analysis is not the economic problems of individual iron workers but rather whether the plaintiff met the standards of eligibility after the Pension Trust Fund was established and whether said standards were fair and reasonable.

We think that the decisional principles articulated in the series of cases challenging the eligibility provisions of the United Mine Workers Welfare and Retirement Fund of 1950 provide the basic framework in which the allegations of Count I must be analyzed. See generally, *Pete, supra.* In one of those cases, the court ruled that the spirit of the statute would be served "by gearing eligibility for a full pension to a condition of substantial contributory employment." *Roark v. Boyle,* 141 U.S.App.D.C. 390, 439 F.2d 497, 503 (1970). In an earlier appeal, the court emphasized the need for judicial circumspection to avoid second guessing the discretionary judgments of the Trustees and held that an eligibility requirement duly promulgated by the Trustees could be set aside only if found to be arbitrary and capricious. See *Roark v. Lewis,* 130 U.S. App.D.C. 360, 401 F.2d 425, 428–29 (1968).

In the instant case, the district court expressly relied on the decisional principles articulated in *Roark I* and *Roark II.* It expressly found that Section 2(a)(3) had a valid factual basis in that it conditioned eligibility for the monetary security of the plan on a small monetary contribution. It expressly found that the Trustees had not been arbitrary or capricious in setting up the plan or in construing its provisions.

The appellant's argument focuses little attention on the duty and responsibility of the Trustees to establish an actuarially sound formula upon which an employee will be entitled to a pension. In formulating the eligibility requirements, the Trustees could not responsibly have declared that anyone or everyone was entitled to pension benefits, regardless of the amount of contributions made in their behalf. In the present case, we are considering the propriety of the Trustees' action in denying an application based upon 239 hours of work for which approximately $54.00 in contributions were made. The Trustees had the responsibility to insure that pension benefits would be available to those who had more than a minimal amount of contributions made in their behalf. The Plan had received no contributions based upon Johnson's prior years of service in the industry.

In its analysis of this pension plan, the district court aptly noted that every pension plan which seeks to cover workers of long prior experience and new workers must, at its inception, strike some compromise between the award of full pensions from the beginning to experienced workers or a requirement of a substantial employment record for new workers after the effective date of the plan in order to establish their eligibility. The district court then went on:

This pension plan required a minimal amount of actual work (six months, or 500 working hours) for a worker to be credited with his many prior years of non-contributing working activity. Eligibility for persons who received this credit was further contingent upon the accumulation of a full year of credit after the effective date, including the first six months of actual work. This court cannot say that minimum requirements of

3. Although the plaintiff never sought certification of the instant suit as a class action, his memorandum in opposition to the defendants' renewed motion to dismiss did point out that

three (3) of the sixteen (16) denials of disability pensions were made because of the failure to comply with the requirements of Section 2(a)(3).

six months of active employment during which contributions are made; or a twelve-month delay, constitute violations of § 186(c)(5). While they may be arbitrary in that they set a "given" number of months in each case, such arbitrariness is inherent in any eligibility scheme that creates categories of time, and does not justify invalidating the plan any more than could a Past Credit requirement of sixteen years instead of fifteen years. In the light of the decisional principles which this court, as well as the district court, have found determinative, there was no error.

## B. Count II

Similarly, there was no error in the district court's judgment that it should not issue a decree of reformation requiring the Trustees to strike Article III § 2(a)(3) from the Pension Plan. Count II of the complaint alleged that it was the intention of the drafters of the Plan not to deny benefits to members who were disabled on or about October 1, 1966, and who would have been employed in covered employment on that date but for their disability. A paragraph in this count alleged that "[i]t was not, nor, as a matter of law, could it rationally have been, the intention of the parties to deny disability pension benefits to members whose disability prevented them from earning two quarters of Future Service Credit after October 1, 1966." In a responsive pleading, the defendant Trustees alleged that the drafters of the Pension Plan wanted to limit participation to those workers who were working for contributing employers at that time and who continued to do so and specifically denied Johnson's allegation about the supposed intention not to deny pension benefits to disabled workers.

■ Since the question of motivation or intent of the parties was a factual matter crucial to the plaintiff's claim for reformation of the Plan, arguably *Staren & Henner v. American National Bank & Tr. Co. of Chicago,* 529 F.2d 1257, 1261–62 (7th Cir. 1976), might appear to suggest that the district court should not have rendered summary judgment on this count. *Staren*

represents a reaffirmation of this court's oft-stated position that questions of motivation or intent are particularly inappropriate for summary judgment. However, we do not think that the alleged silence of the record regarding the intent of the Plan draftsmen is a material issue in this case. In view of the limited jurisdiction of the courts regarding eligibility conditions in pension funds, we conclude that neither 29 U.S.C. § 186(c)(5) nor § 186(e) present a statutory basis upon which the district court could properly strike from the Plan, under the guise of reformation, the assertedly defective Section 2(a)(3).

■ It is true, as appellant argues, that "generally, a court of equity will correct and reform a deed of trust or other trust instrument so as to conform to the intention of the parties." 89 C.J.S. *Trusts* § 86 (1955). We think this general principle of equity jurisprudence must be read in the context of the limited judicial role in the administration of pension trusts. In *Pete, supra,* the court wrote:

> In considering plaintiffs' plea for a reconstitution of eligibility requirements by a court of equity, the latitude of an equity court is subject to the purpose of its authority, to safeguard against arbitrary or capricious actions of the Trustees which threaten to frustrate rather than fulfill the purposes of the Fund, and we would not have latitude as an equity court to dispense with the criterion of substantial . . . service. . . . *Id.* at 1286.

Moreover, the *Pete* court recognized that even when an eligibility requirement has been invalidated by a court of equity, the Trustees are to be accorded the opportunity to fashion valid eligibility standards for applications for benefits which they had earlier rejected. See *id.* at 1283.

■ In this case, the district court found that Section 2(a)(3) was founded on a rational basis and that the Trustees had not acted capriciously. Had it reached the opposite conclusion, its proper action would not have been to reform the trust instru-

ment by striking the unfair eligibility requirement, but rather to require the Trustees to formulate a substitute provision which would meet the statutory standards. The language of 29 U.S.C. § 186(e), which grants to the district courts jurisdiction to restrain violations of that section, does not confer remedial power to reformulate or redraft the eligibility requirements of a pension plan. Even were this court to ignore the Trustees' explicit denial that they did not intend to exclude from pension benefits employees whose disability prevented them from meeting the requirements of § 2(a)(3) and to find that, by mutual mistake, the parties failed to embody their intent in the written trust instrument, the proposed reformation of the Plan would go beyond the narrow latitude which courts of equity possess in this area of pension standards.

## C. Count III

■■■ Count III of the amended complaint alleges that the application of Section 2(a)(3) of the Plan to the plaintiff violates the Due Process Clause of the Fifth Amendment and the Equal Protection Clause of the Fourteenth Amendment. The challenged Pension Plan was qualified for a federal tax exemption under 26 U.S.C. § 401(a), and appellant argues that the result of applying § 401(a) to Article III, § 2(a)(3) of the Plan is to invoke the sanctions of the Federal Government to enforce a grossly discriminatory plan provision. Moreover, it is argued that any inclination which the defendant Trustees might feel to alleviate the harshness caused by the challenged provision is prohibited by the Internal Revenue Code, since failure to follow the precise regulations promulgated pursuant to § 401(a) might jeopardize the Plan's tax exempt status.

The underlying basis for Johnson's constitutional claim, however, is the premise that the challenged eligibility provision creates an unreasonable classification. Although appellant recognizes that the district court focused direct attention on his constitutional claim, he presses as basic error the purported fact that "the court did not analyze the facts in the record in relation to the admittedly different standards involved in the constitutional claim. Therefore, the trial court erred in granting summary judgment on Count III." In essence, the appellant relies on the language in *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961), wherein the Court stated that it was "only by sifting facts and weighing circumstances" that the nonobvious involvement of the State in private conduct could be attributed its true significance. On the basis of this language, Johnson contends that it was "the duty of the trial court to 'sift facts and weigh circumstances' concerning just what scrutiny . . . of the plan was given by I.R.S. and that summary judgment . . . was therefore inappropriate."

Even if it could be said that the involvement of the IRS in the initial approval and operation of the Plan had so far insinuated the Government that it may be properly recognized as a joint participant in the challenged activity, see *Burton, supra* at 725, 81 S.Ct. 856, (which we expressly decline to say) we think the district court properly granted judgment in favor of the defendants on Count III. One of the paragraphs in the Count alleged that Section 2(a)(3) was arbitrary, capricious, and unreasonable. Only upon proof of that allegation could Johnson secure his prayer for relief, which asked the court to declare that the Pension Plan was not entitled to a tax exemption and to order the Trustees to pay to the Government the taxes which they would have been required to pay had they not been awarded the tax exemption.

We have already indicated our view that the district court properly concluded that Section 2(a)(3) was not arbitrary or capricious. Since there was no invidious discrimination, the constitutional claims must necessarily fall.

## D. Count IV

■■■ Count IV alleged that the conduct of the Trustees in incorporating Article III,

 

§ 2(a)(3) into the Plan was arbitrary and capricious, and, therefore, a breach of trust. Appellant asserts that the trial court failed to rule whether the facts in the record indicated a breach of the Trustees' fiduciary duty, so that summary judgment on this Count was error.

We think that the district court did rule on the breach of fiduciary duty claim. It stated cryptically, "No other arguments presented by the plaintiff have merit." In view of its finding that the disputed section was fair and reasonable, we read this statement as a direct ruling that the Trustees had not breached their fiduciary duty.

Johnson argues here, as he did in the district court, that since it was stipulated that the Trustees had in fact awarded him one year of Future Service Credit pursuant to Article III, Section 4(b) of the Plan, he thereby achieved eligibility as to his past years and therefore the Trustees breached their fiduciary duty in arbitrarily and unreasonably failing to award him a disability pension. Even if review were proper of this individualized claim in the district court, we find it to be without merit. The subsection in question provides that an employee "who has *prior* Pension Credits will receive *further* credit for periods of absence from Covered employment" under certain circumstances. (Emphasis added.) The Trustees apparently were satisfied that Johnson had met the circumstances; however, this part of the contract as we construe it does not help Johnson insofar as eligibility for Past Service Credits was concerned. Entitlement to that was not based upon mere length of service but explicitly required *active engagement* in Covered Employment for at least two quarters after October 1, 1966. This specific language cannot be overridden by the general language relating to Pension Credits which in the Plan also have significance on the amount of pension to be paid to an employee otherwise entitled to receive pension benefits. We, as was the district court, are "at a loss to see what 'prior credits' the trustees relied on in awarding the year of future credits." Whatever may have been

their basis for taking this action, whether through a mistake, misunderstanding, or otherwise, the Trustees did not construe this one-year credit to be the equivalent of the "active engagement" called for in Article III, Section 2(a)(3). We cannot disagree with their reading of the Plan in this respect.

We find no error in the grant of summary judgment on the final Count.

For the above stated reasons, the judgment in favor of the defendants on all counts of the complaint is

Affirmed.