**Samuel TORRENCE, Plaintiff,**

v.

**CHICAGO TRIBUNE COMPANY, INC.,**
Charles Levy Circulating Company, Inc.,
First National Bank of Chicago, Chicago Newspaper Publishers' Association-Drivers Union Pension Administrative Board, Chicago Sun-Times Newspaper Division of Field Enterprises, Inc., Capitol News Agency, Defendants.

No. 81 C 0151.

United States District Court,
N. D. Illinois, E. D.

Dec. 1, 1981.

James J. Seaberry, Chicago, Ill., for plaintiff.

David A. Youngerman, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Samuel Torrence brought this action under § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a)(1)(B), seeking relief for the alleged wrongful denial of pension fund benefits. Named as defendants were the Chicago Newspaper Association-Drivers Union Pension Plan ("Plan"), the Chicago Newspaper Association-Drivers Union Pension Administrative Board ("Board"), and the First National Bank of Chicago ("Trustee").[1] Jurisdiction is premised upon 29 U.S.C. § 1132(e). The matter is presently before the Court on defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

In support of a summary judgment motion, the moving party has the burden of showing that there is no dispute as to any genuine issue of fact material to a judgment in its favor as a matter of law. *Cedillo v. International Association of Bridges and Structural Iron Workers, Local Union No. 1*, 603 F.2d 7, 10 (7th Cir. 1979). The non-moving party is entitled to all inferences reasonably made in its favor from the evidence presented. *Id.* at 11; *Moutoux v. Gulling Auto Electric, Inc.*, 295 F.2d 573, 576 (7th Cir. 1961). Applying these standards, for the reasons set forth below, defendants' motion is granted in part and continued in part pending the filing of the supplementary materials described below.

Torrence has been a driver-salesman of newspapers and magazines with various Chicago area enterprises and a dues-paying member of the affiliated union[2] since 1954. Torrence began as a driver-salesman with the Chicago Sun-Times and switched to the Capitol News Agency in 1960, where he worked in the same capacity. This job lasted until 1965, when Torrence began delivering periodicals for the Charles Levy Circulating Company, Inc. ("Levy"). Torrence left Levy in 1972 to work with the Chicago Tribune as a driver-salesman. He continued working with the Tribune until his retirement in 1979.

Upon his retirement, Torrence sought benefits under the Union's Pension Plan.[3] The Pension Board denied his application for benefits after determining that he was an independent contractor rather than a covered employee during the 1965–1972 period he was with Levy. According to the Board, this self-employment period constituted a break-in service,[4] cancelling all service credit for work performed prior to the break,[5] and resulting in Torrence failing to accumulate the ten years of vesting service required for pension eligibility.[6] Torrence

---

1. Although originally named in this suit, the following defendants have been dismissed as improper parties to this action: the Chicago Tribune Company, the Charles Levy Circulating Company, Inc., the Chicago Sun-Times Newspaper Division of Field Enterprises, Inc., and the Capitol News Agency.

2. The Newspaper, Magazine, Periodical, Salesmen, Drivers, Chauffeurs, Division Men, District Managers, Checkers, Vendors and Handlers Union, Local 706, I. B. of T., C., W. and H. of A. ("Union").

3. On January 1, 1976, an amended version of the original 1958 Plan was adopted.

4. A break-in service, as defined in § 1.1(f) of the 1976 Plan, occurs when an employee incurs an unexcused termination of active employment with less than ten years of credited vesting service and is re-employed less than ten years later. Vesting service is defined in § 1.1(ff).

5. A Board resolution adopted in 1966 provides for the forfeiture of all prior credited service upon incurring a break-in service in excess of four years.

6. According to § 1.1(r) of the 1976 Plan, an employee must have attained age sixty and accumulated ten years of vesting service to qualify for pension benefits. Torrence was sixty-two years old when he applied for pension benefits.

contends that there was no break-in service and, alternatively, even if a break-in service did occur, the Board is estopped to deny him benefits because prior to the break he had been assured by several Union officials and Board members that the 1965 job switch would not adversely affect his pension eligibility.

Since all four companies with whom Torrence was associated were signatory employers of the Plan,[7] it is clear that if Torrence were an *employee* of Levy during the 1965–1972 period, he would satisfy the Plan's requirement of ten years vesting service and would thus be entitled to pension benefits. On the other hand, if Torrence's business relationship with Levy were one of an *independent contractor*, his seven-year absence from covered employment would render him ineligible for pension benefits since he would not have accumulated the requisite credited service time by the time he retired in 1979.

■ As to whether an individual is an employee or an independent contractor in a given fact situation, the Supreme Court has stated:

[T]here is no shorthand formula or magic phrase that can be applied to find the answer, but all of the incidents of the relationship must be assessed and weighed with no one factor being decisive. What is important is that the total factual context is assessed in the light of pertinent common law agency principles.

*N.L.R.B. v. United Insurance Company of America*, 390 U.S. 254, 258, 88 S.Ct. 988, 990, 19 L.Ed.2d 1083 (1968). In making this determination herein, the self-serving characterizations by the parties are irrelevant. The test is the extent of control Levy exerted over Torrence during the period in question. *Wardle v. Central States, Southeast and Southwest Areas Pension Fund*, 627 F.2d 820, 824 (7th Cir. 1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981). Factors to be considered in evaluating a business relationship include: the degree of control and supervision over the

manner in which the work is performed; whether the worker operates his own independent business or solely performs functions that are an essential part of the company's normal operations; the company's right to hire and discharge the worker; the form of compensation; whether the worker receives the same benefits as the company's regular employees; which party furnishes the tools or materials which the worker needs to perform the job; whether the relationship is of permanent or temporary character; the beliefs of the parties; and how the parties structure their Social Security and income tax relations. *United Insurance, supra*, 390 U.S. at 259, 88 S.Ct. at 990; *Richardson v. Central States, Southeast and Southwest Areas Pension Fund*, 645 F.2d 660, 663 (8th Cir. 1981); *Wardle, supra*, 627 F.2d at 824–25.

■ In support of his assertion that he was an employee of Levy during the 1965–1972 period, Torrence points out several aspects of his relationship with Levy which purport to support his employee status. These include: Torrence was required to pick up the magazines for delivery at specified times, and the company designated all the delivery locations for Torrence. He was barred from handling the competitors' products. He was subject to discipline, including termination, for unsatisfactory performance. He paid Union dues while working with Levy. Torrence's position notwithstanding, Levy suggests that numerous other facets of Torrence's relationship establish an independent contractor status. These are: Rather than being salaried as were Levy's other employees, Torrence purchased the magazines from Levy at a 25% discount and then resold them to newsstands at full price. Unlike the others, he would deliver magazines only to low-volume spots in "troubled areas" of Chicago. In fact, Levy hired Torrence specifically for the purpose of delivering periodicals to areas where it did not want its regular drivers to go. He was required to put up a $4,000 security bond to guarantee payment for the magazines he purchased on credit. He used

---

7. The employers entered into the Plan in 1958.

his own truck to make the deliveries. Levy did not withhold any income or Social Security tax from Torrence, and he represented himself as self-employed on his Social Security records from 1967–1972. Although he allegedly was repeatedly promised by Levy that he would soon be receiving employee fringe benefits, including employer contributions to the Plan, Torrence knew he was not receiving them during the entire period. Last, although he was a Union steward while working with Levy, Torrence was not in charge of any Levy employees.

The Pension Administrative Board, after concluding its investigation and a series of meetings with Torrence and upon review of the foregoing factors, concluded that Torrence was not an employee but was, rather, an independent contractor at Levy from 1967–1972.

Torrence, in disputing the Board's conclusion, incorrectly relies upon *Lee v. Nesbitt*, 453 F.2d 1309 (9th Cir. 1971), which he asserts demonstrates that the Board's decision was arbitrary or capricious. In *Lee*, the Ninth Circuit held that a rule denying benefits to an employee solely because of an involuntary interruption in employment after completion of the minimum employment requirement and before reaching retirement age was unreasonable on its face. 453 F.2d at 1312. In that case, however, the court of appeals expressly limited its holding to situations where, unlike the case at bar, the minimum employment requirement had been fully attained prior to the break-in service. *Id.* In *Richardson v. Central States, Southeast and Southwest Areas Pension Fund*, 645 F.2d 660 (8th Cir. 1981), also cited by Torrence, there were numerous factors which buttressed the district court's decision to overturn the Board's denial of Richardson's benefits which are not present in Torrence's situation. Those additional factors include: (1) although Richardson owned the vehicle used, he licensed it to his company and it bore the company's colors; (2) the company collected payments and maintained total authority over Richardson's work under an "exclusive contract" agreement; (3) the company had to autho-

rize any substitute drivers; and (4) Richardson could refuse to make a trip only in an emergency. The absence of these and other factors from Torrence's business relationship with Levy distinguish *Richardson* from Torrence's situation.

Reviewing the record before the Board at the time Torrence's pension application was denied, it is clear, as demonstrated above, that Torrence's business relationship with Levy implicated aspects of both employee and independent contractor status. It is not the proper function of the Court to decide between two reasonable, but conflicting, interpretations of the facts presented. Judicial review of the Board's decision to deny Torrence pension benefits is limited to a determination of whether the Board's action was arbitrary or capricious in light of the language of the Plan. *Wardle, supra,* 627 F.2d at 823–24; *Reiherzer v. Shannon,* 581 F.2d 1266, 1272 (7th Cir. 1978); *Johnson v. Botica,* 537 F.2d 930, 935 (7th Cir. 1976). In light of Torrence's hybrid business relationship with Levy, we cannot say the Board's determination that he was an independent contractor during that period was arbitrary or capricious. *Wardle, supra,* 627 F.2d at 826–27. Accordingly, even though a contrary conclusion would not be irreconcilable with the facts, the Board's decision cannot be overturned. *Id.* at 827. Since we hold that there is no genuine dispute of material fact regarding the Board's determination that Torrence was an independent contractor and not an employee with Levy during the 1965–1972 period, defendants' motion for summary judgment must be granted on this issue.

Torrence alternatively argues that even if he were not an employee with Levy, the Board is estopped to apply the break-in service rule and deny him pension benefits because several Union officials and Board members assured him prior to his 1965 job switch to Levy that the move would not detrimentally affect his pension eligibility. Specifically, Torrence alleges that in October, 1965, several Union officials and Board members: (1) informed him that Levy was looking for drivers to deliver magazines to

low-volume outlets in troubled areas of Chicago (and did not want to use its own drivers for such deliveries); (2) urged him to take the job with Levy;[8] and (3) assured him that the job switch would not impair his pension rights.

It is apparent that if Torrence can substantiate his allegations, he may be able to satisfy the requirements of equitable estoppel.[9] *See, e.g., Packard Bell Electronics Corp. v. Ets-Hokin,* 509 F.2d 634, 637 (7th Cir. 1975). However, the law regarding the propriety of invoking the estoppel doctrine under these circumstances is currently in a state of flux. While numerous cases have explicitly or implicitly recognized that pension boards could be estopped to deny benefits in certain situations,[10] other cases have barred this attack on a pension board's decision, finding that such use of the doctrine improperly infringes upon the rights of qualified beneficiaries.[11]

In the case at bar, neither side has adequately discussed the application of estoppel principles in Torrence's situation. In order to allow the Court to decide this issue of defendants' summary judgment motion, defendants are hereby directed to file a brief, affidavits, or other relevant matter as to this issue on or before December 11, 1981. Torrence may file responsive papers by December 18, 1981. Defendants may reply thereto by December 28, 1981.

In summary, defendants' motion for summary judgment as to Torrence's claim that the Board's decision denying him benefits was arbitrary or capricious is granted. Our ruling as to Torrence's estoppel argument against granting defendants' summary judgment motion will be stayed pending the foregoing briefing schedule.[12] Our order setting the status date of December 4, 1981, will be vacated. A status hearing will be held on January 29, 1982, at 10:00 A.M. It is so ordered.

---

**8.** Torrence alleges that the Union officials and Board members "instructed [him] to work for Levy" and "ordered his transfer" thereto. However, while Torrence may be able to show that he reasonably relied upon improper assurances by these individuals to his detriment, there is no evidence in the record to suggest that his job switch was not undertaken voluntarily. At this point in the proceedings, we of course express no opinion as to the merit of Torrence's allegations.

**9.** Although judicial review of a pension board's decision is limited to a determination of whether the board's actions were arbitrary or capricious, the courts retain the traditional judicial control over fiduciaries in light of federal labor policy. *Rosen v. Hotel and Restaurant Employees & Bartenders Union,* 637 F.2d 592, 596 (3d Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981); *Rehmar v. Smith,* 555 F.2d 1362, 1371 (9th Cir. 1976).

**10.** *See, e.g., Scheuer v. Central States Pension Fund,* 358 F.Supp. 1332 (E.D.Wis.1973), *on rehearing,* 394 F.Supp. 193 (E.D.Wis.1975), *aff'd without opinion,* 570 F.2d 347 (7th Cir. 1977); *Rosen, supra,* 637 F.2d 592; *Haeberle v. Board of Trustees of Buffalo Carpenters,* 624 F.2d 1132 (2d Cir. 1980); *Gordon v. ILWU–PMA Benefit Funds,* 616 F.2d 433 (9th Cir. 1980); *Rehmar, supra,* 555 F.2d 1362.

**11.** *See, e.g., Reiherzer v. Shannon,* 581 F.2d 1266, 1267 n.1 (7th Cir. 1978); *Aitken v. IP & GCU—Employer Retirement Fund,* 604 F.2d 1261 (9th Cir. 1979); *Thurber v. Western Conference of Teamsters Pension Plan,* 542 F.2d 1106 (9th Cir. 1976); *Phillips v. Kennedy,* 542 F.2d 52 (8th Cir. 1976); *Moglia v. Geoghegan,* 403 F.2d 110 (2d Cir. 1968), *cert. denied,* 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453 (1969). Most of the cases rejecting the use of the estoppel doctrine under these circumstances have explicitly left open the possibility of individual liability of the pension board or union officers in their capacity as fiduciaries. The Court expresses no opinion on the possible liability of the individuals who allegedly made the misrepresentations for breach of fiduciary duty or fraud.

**12.** Torrence also alleges that the Board's decision was arbitrary or capricious because it failed to more thoroughly investigate the alleged misrepresentations. As a practical matter, this Court will be in a better position than the pension board to deal with the estoppel question once the parties file the responsive memoranda described above. *See Scheuer, supra,* 358 F.Supp. at 1338–39 n.5.